No. 21-51178

# In the United States Court of Appeals for the Fifth Circuit

NETCHOICE, L.L.C., A 501(C)(6) DISTRICT OF COLUMBIA ORGANIZATION DOING BUSINESS AS NETCHOICE; COMPUTER & COMMUNICATIONS INDUSTRY ASSOCIATION, A 501(C) (6) NON-STOCK VIRGINIA CORPORATION DOING BUSINESS AS CCIA,

*Plaintiffs-Appellees,*

*v.*

KEN PAXTON, IN HIS OFFICIAL CAPACITY AS ATTORNEY GENERAL OF TEXAS,

*Defendant-Appellant.*

On Appeal from the United States District Court
for the Western District of Texas, Austin Division
Civil Action No. 1:21-cv-00840-RP

## APPELLEES' UNOPPOSED MOTION TO STAY THE MANDATE PENDING PETITION FOR WRIT OF CERTIORARI

Steven P. Lehotsky
Gabriela Gonzalez-Araiza
Jeremy Evan Maltz
LEHOTSKY KELLER LLP
200 Massachusetts Avenue, NW
Washington, DC 20001

Katherine C. Yarger
LEHOTSKY KELLER LLP
700 Colorado Blvd., #407
Denver, CO 80206

Scott A. Keller
Matthew H. Frederick
Todd Disher
LEHOTSKY KELLER LLP
919 Congress Ave.
Austin, TX 78701
scott@lehotskykeller.com
(512) 693-8350

*Counsel for Plaintiffs-Appellees*

# CERTIFICATE OF INTERESTED PERSONS

No. 21-51178

NetChoice, L.L.C., a 501(c)(6) District of Columbia organization doing business as NetChoice; Computer & Communications Industry Association, a 501(c) (6) non-stock Virginia Corporation doing business as CCIA,

*Plaintiffs-Appellees*,

*v.*

Ken Paxton, in his official capacity as Attorney General of Texas,

*Defendant-Appellant.*

The undersigned counsel of record certifies that the following listed persons and entities as described in the fourth sentence of Rule 28.2.1 have an interest in the outcome of this case. Plaintiffs-Appellees NetChoice and CCIA have no parent corporations and no publicly held corporation owns 10% or more of their respective stock. These representations are made in order that the judges of this Court may evaluate possible disqualification or recusal.

**Plaintiffs-Appellees:**

NetChoice, L.L.C., a 501(c)(6) District of Columbia organization doing business as NetChoice; and Computer & Communications Industry Association, a 501(c)(6) non-stock Virginia Corporation doing business as CCIA

**Counsel for Plaintiffs-Appellees:**

Scott A. Keller (lead counsel)

Steven P. Lehotsky

Kyle D. Hawkins

Matthew H. Frederick

Todd Disher

Katherine C. Yarger

Jonathan D. Urick

Gabriela Gonzalez-Araiza

Jeremy Evan Maltz

LEHOTSKY KELLER LLP

**Defendant-Appellant:**

Ken Paxton, in his official capacity as Attorney General of Texas

**Counsel for Defendant-Appellant:**

Ken Paxton

Brent Webster

Judd Edward Stone II

Ryan Baasch

Benjamin S. Lyles

Benjamin S. Walton

Christopher D. Hilton

Courtney Brooke Corbello

OFFICE OF THE ATTORNEY GENERAL

DISTRICT COURT AMICI

**Amici in Support of Plaintiffs-Appellees:**

Chamber of Progress; Connected Commerce Council; CTA; Engine Advocacy; Information Technology & Innovation Foundation; National Black Justice Coalition; Progressive Policy Institute; TechNet; Washington Center for Technology Policy; Hispanic Technology and Telecommunications Partnership

**Counsel for Chamber of Progress, et al.:**
William Reid Wittliff
WITTLIFF CUTTER P.L.L.C.

**Amici in Support of Plaintiffs-Appellees:**
The Reporters Committee for Freedom of the Press; The American Civil Liberties Union; The Center for Democracy & Technology; The Media Law Resource Center; and American Civil Liberties Union of Texas

**Counsel for Reporters Committee for Freedom of the Press, et al.:**
Catherine Lewis Robb
Laura Lee Prather
HAYNES AND BOONE, LLP

**Amicus in Support of Plaintiffs-Appellees:**
TechFreedom

**Counsel for TechFreedom:**
Corbin K. Barthold
TECHFREEDOM

**Amicus in Support of Plaintiffs-Appellees:**
Electronic Frontier Foundation

**Counsel for Electronic Frontier Foundation:**
David Greene
Mukund Rathi
ELECTRONIC FRONTIER FOUNDATION

Thomas S. Leatherbury
VINSON & ELKINS LLP

**Amici in Support of Defendant-Appellant:**

The Babylon Bee; Not the Bee; Giganews, Inc.; and Golden Frog, Inc.

**Counsel for The Babylon Bee, et al.:**

W. Scott McCollough

MCCOLLOUGH LAW FIRM, P.C.

Evan Miles Goldberg

EVAN MILES GOLDBERG, PLLC

AMICI FILING IN SUPPORT OF DEFENDANT-APPELLANT'S
MOTION TO STAY PENDING APPEAL IN FIFTH CIRCUIT

**Amici in Support of Defendant-Appellant:**

Texas Public Policy Foundation; The Babylon Bee; Not the Bee; Giganews, Inc.; and Golden Frog, Inc.

**Counsel for Texas Public Policy Foundation, et al.:**

W. Scott McCollough

MCCOLLOUGH LAW FIRM, P.C.

Evan Miles Goldberg

EVAN MILES GOLDBERG, PLLC

Robert Henneke

TEXAS PUBLIC POLICY FOUNDATION

COURT OF APPEALS AMICI AT MERITS STAGE

**Amicus in Support of Defendant-Appellant:**
Professor Philip Hamburger

**Counsel for Professor Philip Hamburger:**
Kyle Singhal
HOPWOOD & SINGHAL, PLLC

**Amici in Support of Defendant-Appellant:**
Moms for Liberty and Institute for Free Speech

**Counsel for Moms for Liberty, et al.:**
Endel Kolde
Alan Gura
INSTITUTE FOR FREE SPEECH

**Amici in Support of Defendant-Appellant:**
Heartland Institute and American Principles Project

**Counsel for Heartland Institute, et al.:**
Joseph D. Sibley, IV
CAMARA & SIBLEY, L.L.P.

**Amicus in Support of Defendant-Appellant:**
Leonid Goldstein, *pro se*

**Amici in Support of Defendant-Appellant:**
Center for Renewing America, Incorporated; and The Claremont Institute's Center for Constitutional Jurisprudence

**Counsel for Center for Renewing America, Incorporated, et al.:**
Andrei D. Popovici
LAW OFFICE OF ANDREI D. POPOVICI, P.C.

John C. Eastman
Anthony T. Caso
CONSTITUTIONAL COUNSEL GROUP

**Amicus in Support of Defendant-Appellant:**
David Mamet

**Counsel for David Mamet:**
Sarah Rogers
BREWER, ATTORNEYS & COUNSELORS

**Amicus in Support of Defendant-Appellant:**
Donald W. Landry, M.D.

**Counsel for Donald W. Landry, M.D.:**
James R. Lawrence, III
ENVISAGE LAW PARTNERSHIP

**Amicus in Support of Defendant-Appellant:**
iTexasPolitics, L.L.C., doing business as The Texan

**Counsel for iTexasPolitics:**

Matthew R. Miller, Esq.

TEXAS PUBLIC POLICY FOUNDATION

**Amici in Support of Defendant-Appellant:**

The States of Florida, Alabama, Alaska, Arizona, Arkansas, Kentucky, Louisiana, Mississippi, Missouri, Montana, and South Carolina

**Counsel for State of Florida, et al.:**

Ashley Moody

Henry C. Whitaker

Daniel W. Bell

Evan Ezray

OFFICE OF THE FLORIDA ATTORNEY GENERAL

Steve Marshall

ATTORNEY GENERAL OF ALABAMA

Jeff Landry

ATTORNEY GENERAL OF LOUISIANA

Treg Taylor

ATTORNEY GENERAL OF ALASKA

Lynn Fitch

ATTORNEY GENERAL OF MISSISSIPPI

Mark Brnovich

ATTORNEY GENERAL OF ARIZONA

Eric Schmitt

ATTORNEY GENERAL OF MISSOURI

Leslie Rutledge
ATTORNEY GENERAL OF ARKANSAS

Austin Knudsen
ATTORNEY GENERAL OF MONTANA

Daniel Cameron
ATTORNEY GENERAL OF KENTUCKY

Alan Wilson
ATTORNEY GENERAL OF SOUTH CAROLINA

**Amicus in Support of Defendant-Appellant:**
Students at Columbia Against Censorship

**Counsel for Students at Columbia Against Censorship:**
John Clay Sullivan
SL LAW, P.L.L.C.

**Amicus in Support of Plaintiffs-Appellees:**
IP Justice

**Counsel for IP Justice:**
Robin D. Gross
IP JUSTICE

**Amicus in Support of Plaintiffs-Appellees:**
TechFreedom

**Counsel for TechFreedom:**
Corbin K. Barthold
Berin Szóka
Ari Cohn
TECHFREEDOM

**Amici in Support of Plaintiffs-Appellees:**
Chamber of Progress, Connected Commerce Council, CTA®, Engine Advocacy, Information Technology & Innovation Foundation, TechNet, Washington Center for Technology Policy Inclusion; and Hispanic Technology & Telecommunications Partnership

**Counsel for Chamber of Progress, et al.:**
William Reid Wittliff
WITTLIFF CUTTER P.L.L.C.

**Amicus in Support of Plaintiffs-Appellees:**
Knight First Amendment Institute at Columbia University

**Counsel for Knight First Amendment Institute at Columbia University:**
Scott Wilkens
Alex Abdo
Jameel Jaffer
KNIGHT FIRST AMENDMENT INSTITUTE AT COLUMBIA UNIVERSITY

**Amici in Support of Plaintiffs-Appellees:**
Electronic Frontier Foundation; National Coalition Against Censorship; and Woodhull Freedom Foundation

**Counsel for Electronic Frontier Foundation, et al.:**
Thomas S. Leatherbury
VINSON & ELKINS L.L.P.

David Greene
Mukund Rathi
ELECTRONIC FRONTIER FOUNDATION

**Amicus in Support of Plaintiffs-Appellees:**
Cato Institute

**Counsel for Cato Institute:**
Thomas Berry
Trevor Burrus
Nicole Saad Bembridge
CATO INSTITUTE

**Amicus in Support of Plaintiffs-Appellees:**
Floor64, Incorporated, doing business as Copia Institute

**Counsel for Floor 64:**
Catherine R. Gellis

**Amicus in Support of Plaintiffs-Appellees:**
Christopher Cox

**Counsel for Christopher Cox:**
Mary Ellen Roy
Dan Zimmerman
PHELPS DUNBAR LLP

**Amici in Support of Plaintiffs-Appellees:**

The Reporters Committee for Freedom of the Press; American Booksellers for Free Expression; American Civil Liberties Union; The Authors Guild Inc; Center for Democracy & Technology, The Media Coalition Foundation; and Media Law Resource Center

**Counsel for Reporters Committee for Freedom of the Press, et al.:**

Bruce D. Brown

Katie Townsend

Gabe Rottman

Grayson Clary

Gillian Vernick

REPORTERS COMMITTEE FOR FREEDOM OF THE PRESS

AMICI AT UNITED STATES SUPREME COURT

FOR EMERGENCY APPLICATION TO VACATE STAY

**Amicus in Support of Plaintiffs-Appellees:**

Professor Eric Goldman

**Counsel for Prof. Goldman:**

Tod Cohen

Amanda Estep

Rachel A. Chung

Joshua Goode

Jonathan Schneller

Aaron Henson

O'MELVENY & MYERS LLP

**Amici in Support of Plaintiffs-Appellees:**

Chamber of Progress; Anti-Defamation League; Connected Commerce Council; Consumer Technology Association; Engine Advocacy; Family Online Safety Institute; HONR Network; Information Technology & Innovation Foundation; Interactive Advertising Bureau; IP Justice; LGBT Tech Institute; Multicultural Media; Telecom and Internet Council; National Association for the Advancement of Colored People; National Hispanic Media Coalition; Our Vote Texas; Software & Information Industry Association; Stop Child Predators; TechNet; Texas State Conference of the NAACP; and Washington Center for Technology Policy Inclusion

**Counsel for Chamber of Progress, et al.:**

Paul W. Hughes

Sarah P. Hogarth

Alex C. Boota

MCDERMOTT WILL & EMERY LLP

**Amicus in Support of Plaintiffs-Appellees:**

TechFreedom

**Counsel for TechFreedom:**

Mark W. Brennan

J. Ryan Thompson

Jonathan O. Hirsch

Yanni Chen

HOGAN LOVELLS US LLP

**Amicus in Support of Plaintiffs-Appellees:**

Floor64, Inc. D/B/A/ The Copia Institute

**Counsel for Floor64:**

Catherine R. Gellis, Esq.

**Amicus in Support of Plaintiffs-Appellees:**
Christopher Cox

**Counsel for Christopher Cox:**
Arthur R. Kraatz
Mary Ellen Roy
Dan Zimmerman
PHELPS DUNBAR LLP

**Amici in Support of Plaintiffs-Appellees:**
The Reporters Committee for Freedom of the Press; American Booksellers for Free Expression; American Civil Liberties Union; American Civil Liberties Union of Texas; Authors Guild; Media Coalition Foundation; and Media Law Resource Center

**Counsel for Reporters Committee for Freedom of the Press, et al.:**
Bruce D. Brown
Katie Townsend
Gabe Rottman
Grayson Clary
Gillian Vernick
REPORTERS COMMITTEE FOR FREEDOM OF THE PRESS

**Amici in Support of Plaintiffs-Appellees:**
Center for Democracy & Technology; Electronic Frontier Foundation; National Coalition Against Censorship; R Street Institute; Wikimedia Foundation; and Woodhull Freedom Foundation

**Counsel for Center for Democracy & Technology, et al.:**
David Greene
Mukund Rathi
ELECTRONIC FRONTIER FOUNDATION

Thomas S. Leatherbury
VINSON & ELKINS L.L.P.

Samir Jain
Emma Llansó
Caitlin Vogus
CENTER FOR DEMOCRACY & TECHNOLOGY

Lawrence G. Walters
WALTERS LAW GROUP

**Amici in Support of Defendant-Appellant:**

States of Florida, Alabama, Alaska, Arizona, Arkansas, Iowa, Kentucky, Mississippi, Missouri, Montana, Nebraska, South Carolina

**Counsel for Florida, et al.:**

Ashley Moody
Henry C. Whitaker
Daniel W. Bell
Evan Ezray
FLORIDA OFFICE OF THE ATTORNEY GENERAL

**Amici in Support of Defendant-Appellant:**

Professor Philip Hamburger; Giganews; and Golden Frog

**Counsel for Professor Hamburger, et al.:**

Shon Hopwood

Kyle Singhal

HOPWOOD & SINGHAL, PLLC

W. Scott McCollough

MCCOLLOUGH LAW FIRM, P.C.

Evan M. Goldberg

EVAN MILES GOLDBERG, PLLC

*/s/ Scott A. Keller*

SCOTT A. KELLER

*Counsel of Record for*
*Plaintiffs-Appellees*

# TABLE OF CONTENTS

**Page**

Certificate of Interested Persons ............................................................................i

Table of Contents ........................................................................................ xvi

Table of Authorities ................................................................................... xvii

Introduction ....................................................................................................1

Argument .........................................................................................................4

    I.   There is a reasonable probability four Justices would grant certiorari review...................................................................................4

    II.  There is a significant possibility Plaintiffs will prevail on the merits......................................................................................................10

    III. Plaintiffs will suffer irreparable harm absent a stay of the mandate....................................................................................................16

Conclusion......................................................................................................19

Certificate of Service .....................................................................................20

Certificate of Compliance .............................................................................20

Certificate of Conference...............................................................................21

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Ala. Ass'n of Realtors v. Dep't of Health & Human Servs.,*
141 S. Ct. 2485 (2021) (per curiam) ................................................18

*Am. Beverage Ass'n v. City & Cnty. of San Francisco,*
916 F.3d 749 (9th Cir. 2019) (en banc)................................................9

*Am. Hosp. Ass'n v. Azar,*
983 F.3d 528 (D.C. Cir. 2020)................................................9

*Am. Meat Inst. v. U.S. Dep't of Agric.,*
760 F.3d 18 (D.C. Cir. 2014)................................................9

*Ark. Educ. TV Comm'n v. Forbes,*
523 U.S. 666 (1998)................................................12

*Baldwin v. Maggio,*
715 F.2d 152 (5th Cir. 1983)................................................1, 4

*Bartnicki v. Vopper,*
532 U.S. 514 (2001)................................................12

*BST Holdings, L.L.C. v. OSHA,*
17 F.4th 604 (5th Cir. 2021)................................................18

*Cal. Chamber of Commerce v. Council for Educ. & Research on
Toxics,*
29 F.4th 468 (9th Cir. 2022)................................................9

*Chamber of Commerce v. EPA,*
577 U.S. 1127 (2016)................................................18

*Chaplinsky v. New Hampshire,*
315 U.S. 568 (1942)................................................11

*Citizens United v. FEC*,
    558 U.S. 310 (2010).........................................................................13

*CTIA—The Wireless Ass'n v. City of Berkeley*,
    854 F.3d 1105 (9th Cir. 2017).............................................................9

*CTIA—The Wireless Ass'n v. City of Berkeley*,
    928 F.3d 832 (9th Cir. 2019)...............................................................9

*Davison v. Facebook, Inc.*,
    370 F. Supp. 3d 621 (E.D. Va. 2019), *aff'd*, 774 F. App'x 162
    (4th Cir. 2019)..................................................................................6

*Disc. Tobacco City & Lottery, Inc. v. United States*,
    674 F.3d 509 (6th Cir. 2012)...............................................................9

*Doe v. MySpace, Inc.*,
    528 F.3d 413 (5th Cir. 2008).............................................................13

*e-ventures Worldwide, LLC v. Google, Inc.*,
    2017 WL 2210029 (M.D. Fla. Feb. 8, 2017).......................................6

*Green v. Am. Online (AOL)*,
    318 F.3d 465 (3d Cir. 2003)..............................................................13

*Harris v. Quinn*,
    573 U.S. 616 (2014)...........................................................................5

*Hollingsworth v. Perry*,
    558 U.S. 183 (2010)....................................................................4, 10

*Hurley v. Irish-Am. Gay, Lesbian & Bisexual Grp. of Boston*,
    515 U.S. 557 (1995).........................................................................12

*Isaac v. Twitter*,
    557 F. Supp. 3d 1251 (S.D. Fla. 2021)...............................................6

*J. M. Fields of Anderson, Inc. v. Kroger Co.*,
  310 F.2d 562 (5th Cir. 1962) ............................................................17

*La'Tiejira v. Facebook, Inc.*,
  272 F. Supp. 3d 981 (S.D. Tex. 2017) ................................................6

*Langdon v. Google, Inc.*,
  474 F. Supp. 2d 622 (D. Del. 2007) ...................................................6

*Manhattan Cmty. Access Corp. v. Halleck*,
  139 S. Ct. 1921 (2019)......................................................................12

*Miami Herald Publ'g Co. v. Tornillo*,
  418 U.S. 241 (1974)..........................................................................12

*Nat'l Ass'n of Mfrs. (NAM) v. SEC*,
  800 F.3d 518 (D.C. Cir. 2015).........................................................8, 9

*Nat'l Inst. of Family & Life Advocates v. Becerra*,
  138 S. Ct. 2361 (2018)......................................................................16

*NetChoice, LLC v. Attorney Gen.*,
  34 F.4th 1196 (11th Cir. 2022)....................................................*passim*

*NetChoice, LLC v. Paxton*,
  142 S. Ct. 1715 (2022)................................................................*passim*

*O'Handley v. Padilla*,
  579 F. Supp. 3d 1163 (N.D. Cal.), *appeal docketed*, No. 22-15071
  (9th Cir. Jan. 18, 2022) ......................................................................6

*PG&E v. PUC of California*,
  475 U.S. 1 (1986)..............................................................................12

*Publius v. Boyer-Vine*,
  237 F. Supp. 3d 997 (E.D. Cal. 2017) ................................................6

*R.J. Reynolds Tobacco Co. v. Food & Drug Admin.,*
  696 F.3d 1205 (D.C. Cir. 2012)..............................................................9

*Recht v. Morrisey,*
  32 F.4th 398 (4th Cir. 2022).................................................................9

*Reno v. ACLU,*
  521 U.S. 844 (1997)......................................................................11, 13

*Roman Catholic Diocese of Brooklyn v. Cuomo,*
  141 S. Ct. 63 (2020) (per curiam) ....................................................17

*Snyder v. Phelps,*
  562 U.S. 443 (2011).............................................................................5

*Sorrell v. IMS Health Inc.,*
  564 U.S. 552 (2011)......................................................................11, 12

*United States v. Stevens,*
  559 U.S. 460 (2010).............................................................................5

*USTA v. FCC,*
  855 F.3d 381 (D.C. Cir. 2017).............................................................6

*W. Airlines, Inc. v. Int'l Bhd. of Teamsters & Air Transp. Emps.,*
  480 U.S. 1301 (1987)...................................................................4, 5, 16

*Zauderer v. Off. of Disciplinary Counsel of Supreme Court of Ohio,*
  471 U.S. 626 (1985)..................................................................8, 9, 16

*Zhang v. Baidu.com, Inc.,*
  10 F. Supp. 3d 433 (S.D.N.Y. 2014) ...................................................6

**Statutes**

47 U.S.C. § 230 .......................................................................................13

Fla. Stat. § 501.2041 ..............................................................................15

Tex. Bus. & Com. Code § 120.051 ...................................................8

Tex. Bus. & Com. Code § 120.053 ...................................................8

Tex. Bus. & Com. Code § 120.101 ...................................................7

Tex. Bus. & Com. Code § 120.102 ...................................................7

Tex. Bus. & Com. Code § 120.103 ...................................................7

Tex. Bus. & Com. Code § 120.104 ...................................................7

Tex. Civ. Prac. & Rem. Code § 143A.001 .........................................15

Tex. Civ. Prac. & Rem. Code § 143A.007 .........................................15

## Rules

Fed. R. App. P. 27 .........................................................................1

Fed. R. App. P. 41 ...................................................................1, 4, 10

Sup. Ct. R. 10 ..............................................................................5, 7

## Other Authorities

Emergency Application, *NetChoice, LLC v. Paxton*, No. 21A720,
    2022 WL 1559655 (U.S. May 13, 2022) ...................................4, 7, 16

Fla. Pet. for Certiorari, *Moody v. NetChoice, LLC*, No. 22-277 (U.S.
    Sept. 21, 2022) ....................................................................*passim*

NetChoice, By the Numbers, https://bit.ly/3Gn54Hj ......................................14

Order Staying Mandate, 11th Cir. Case No. 21-12355 (June 22,
    2022) ..................................................................................2

Pursuant to Federal Rules of Appellate Procedure 27(a)(1) and 41(d), Plaintiffs move to stay the issuance of this Court's mandate pending Plaintiffs' forthcoming petition for a writ of certiorari in the U.S. Supreme Court and any further proceedings in the Supreme Court. Defendant-Appellant ***does not oppose*** the relief requested in this motion on the condition that Plaintiffs do not seek an extension of time to file a certiorari petition in the Supreme Court. Plaintiffs have agreed to that condition, so this motion is unopposed.

## INTRODUCTION

Four months ago, the Supreme Court made clear that the status quo should continue—and Defendant should not be able to enforce Texas House Bill 20 (HB20)—until the full appellate process plays out. *NetChoice, LLC v. Paxton*, 142 S. Ct. 1715, 1715-16 (2022) (restoring district court's preliminary injunction by vacating this Court's order staying the preliminary injunction pending appeal). That decision necessarily concluded that Supreme Court review of this Court's decision is likely, that Plaintiffs have a fair prospect of prevailing, and that Plaintiffs face irreparable harm should Defendant begin enforcing HB20. Even three Justices who dissented from that order recognized that this case "concerns issues of great importance that will plainly merit th[e] [Supreme] Court's review." *Id.* at 1716 (Alito, J., dissenting). Those are precisely the factors that govern this motion. *Baldwin v. Maggio*, 715 F.2d 152, 153 (5th Cir. 1983). Accordingly, this Court should stay the

1

issuance of its mandate and preserve the status quo while the Supreme Court conducts its review.

Granting a stay will prevent irreparable harm to Plaintiffs' member companies while the Supreme Court reviews the vital constitutional issues raised by legislation such as HB20. The majority opinion in this case creates a clear circuit split with the Eleventh Circuit and misapplies the Supreme Court's important First Amendment precedents. After Florida and Texas both enacted statutes compelling social media websites to publish and disseminate speech, Plaintiffs obtained preliminary injunctions before these laws took effect.[1] The Eleventh Circuit largely upheld the preliminary injunction of Florida's law. *NetChoice, LLC v. Attorney Gen.*, 34 F.4th 1196, 1203 (11th Cir. 2022) [hereinafter "*Moody*"]. And the Eleventh Circuit stayed its mandate pending a certiorari petition in that case, where the Plaintiffs will acquiesce to certiorari review. Order Staying Mandate, 11th Cir. Case No. 21-12355 (June 22, 2022). The Florida Attorney General filed a certiorari petition in that case (U.S. No. 22-277) on September 21, 2022 [hereinafter "Fla.Pet."]. There, the Florida Attorney General acknowledged, "All in all, the Fifth and Eleventh Circuits fundamentally disagreed about the First Amendment principles applicable to social-media censorship." Fla.Pet.18.

---

[1] Digital online services offer a variety of websites, applications, and other products. This motion refers to HB20-covered "social media platforms" as "websites."

2

The majority here expressly disagreed with the Eleventh Circuit's analysis. *See* Op.79 ("we disagree with the Eleventh Circuit's reasoning at three critical junctures"); Op.82-89. As the Eleventh Circuit ruled after canvassing the Supreme Court's precedents, "social-media companies—even the biggest ones—are 'private actors' whose rights the First Amendment protects," "their so-called 'content-moderation' decisions constitute protected exercises of editorial judgment," and laws "that restrict large platforms' ability to engage in content moderation unconstitutionally burden that prerogative." *Moody*, 34 F.4th at 1203. The majority here disagreed on the ground that content-moderation decisions are just "the Platforms' *conduct*"—and therefore unprotected by the Constitution. Op.7. So of the eight federal judges in total that have reviewed these issues in the Florida and Texas cases, six have found that social media websites have First Amendment rights to choose what speech they publish and how.

The Eleventh Circuit further invalidated certain "particularly onerous disclosure provisions" as "violat[ing] the First Amendment." *Moody*, 34 F.4th at 1203. This Court disagreed, upholding all of HB20's disclosure provisions. Op.73-79.

If Supreme Court review was "plainly merit[ed]" even before this circuit split, *Paxton*, 142 S. Ct. at 1716 (Alito, J., dissenting), it certainly is now. In the interim, this Court should forestall the whiplash and harms of on-again, off-again enforcement of HB20. This Court should stay its mandate pending the Supreme Court's review.

## ARGUMENT

Plaintiffs are entitled to a stay of this Court's mandate pending a certiorari petition because there is: (1) "a reasonable probability that four members of the [Supreme] Court would consider the underlying issue sufficiently meritorious for the grant of certiorari"; (2) "a significant possibility of reversal of [this] court's decision"; and (3) "a likelihood that irreparable harm will result if that decision is not stayed." *Baldwin*, 715 F.2d at 153; *see* Fed. R. App. P. 41(d)(1) (stay of mandate warranted when certiorari "petition would present a substantial question and … there is good cause for a stay"). The Supreme Court necessarily resolved these three factors when it granted Plaintiffs' application to vacate this Court's stay of the district court's preliminary injunction pending appeal. *Paxton*, 142 S. Ct. at 1715-16; *see Hollingsworth v. Perry*, 558 U.S. 183, 190 (2010); *W. Airlines, Inc. v. Int'l Bhd. of Teamsters & Air Transp. Emps.*, 480 U.S. 1301, 1305 (1987) (O'Connor, J., in chambers); *see* Emergency Application, *NetChoice, LLC v. Paxton*, No. 21A720, 2022 WL 1559655, at *14 (U.S. May 13, 2022) [hereinafter "Appl."]. This Court should follow the Supreme Court's determination and stay its mandate.

## I.  There is a reasonable probability four Justices would grant certiorari review.

The Supreme Court's May 2022 vacatur order in this case, *Paxton*, 142 S. Ct. at 1715-16, demonstrated that this case "could and very likely would be reviewed" in the Supreme Court. *Teamsters*, 480 U.S. at 1305 (citation omitted). In addition to the five Justices that voted to vacate the stay, three of the

dissenting Justices recognized this case warrants the Supreme Court's review. *Paxton*, 142 S. Ct. at 1716 (Alito, J., dissenting). Supreme Court review is thus "very likely," *Teamsters*, 480 U.S. at 1305, especially now after this Court expressly split with the Eleventh Circuit.

As the Florida Attorney General recently told the Supreme Court, the issues raised in these cases are worthy of Supreme Court review. Fla.Pet.10-13. Until now, no court had ever issued an opinion holding that the government can compel websites to publish, display, disseminate, and subsidize speech against their will. In so doing, the Court's judgment satisfies at least two bases for Supreme Court review, each independently sufficient: it (1) is "in conflict with the decision of another United States court of appeals"—the Eleventh Circuit's decision in parallel litigation brought by the same Plaintiffs here; and (2) resolves multiple "important federal question[s] in a way that conflicts with relevant decisions of [the Supreme] Court." Sup. Ct. R. 10(a), (c). The Supreme Court routinely grants review of lower courts' important First Amendment rulings, even without square circuit splits. *E.g.*, *Harris v. Quinn*, 573 U.S. 616, 627 (2014) (granting certiorari not to resolve a split, but rather "[i]n light of the important First Amendment questions these laws raise"); *Snyder v. Phelps*, 562 U.S. 443, 451 (2011); *United States v. Stevens*, 559 U.S. 460, 467 (2010).

**A. HB20 Section 7's Anti-Editorial Discretion Provisions.** The majority's analysis expressly conflicts with the Eleventh Circuit's analysis of identical issues. *Compare Moody*, 34 F.4th at 1210-30, *with* Op.82-89; *see also*

Fla.Pet.14 (noting disagreement "on the threshold question of whether the platforms are speaking at all when they censor a user's speech"); Fla.Pet.15 ("The Fifth and Eleventh Circuits also parted ways on whether the platforms make 'editorial judgments' at all.").

Specifically, the majority disagreed that: (1) private entities publishing speech have the right to engage in editorial discretion choosing what speech they disseminate, *Moody*, 34 F.4th at 1210-14; (2) social media websites engage in such protected editorial discretion, *id.* at 1210; and (3) Florida's analogous regulation did not satisfy even intermediate scrutiny because the State lacked a legitimate interest, *id.* at 1223-30.

The Eleventh Circuit's decision reflects the lockstep view of lower courts that websites have a First Amendment right to choose which speech they publish and how.[2] Put simply, the government "may not ... tell Twitter or YouTube what videos to post; or tell Facebook or Google what content to favor." *USTA v. FCC*, 855 F.3d 381, 435 (D.C. Cir. 2017) (Kavanaugh, J.,

---

[2] *E.g.*, *O'Handley v. Padilla*, 579 F. Supp. 3d 1163, 1186-88 (N.D. Cal.), *appeal docketed*, No. 22-15071 (9th Cir. Jan. 18, 2022); *Isaac v. Twitter*, 557 F. Supp. 3d 1251, 1261 (S.D. Fla. 2021); *Davison v. Facebook, Inc.*, 370 F. Supp. 3d 621, 629 (E.D. Va. 2019), *aff'd*, 774 F. App'x 162 (4th Cir. 2019); *e-ventures Worldwide, LLC v. Google, Inc.*, 2017 WL 2210029, at *4 (M.D. Fla. Feb. 8, 2017); *La'Tiejira v. Facebook, Inc.*, 272 F. Supp. 3d 981, 991 (S.D. Tex. 2017); *see also Publius v. Boyer-Vine*, 237 F. Supp. 3d 997, 1008 (E.D. Cal. 2017); *Zhang v. Baidu.com, Inc.*, 10 F. Supp. 3d 433, 437, 440 (S.D.N.Y. 2014); *Langdon v. Google, Inc.*, 474 F. Supp. 2d 622, 629-30 (D. Del. 2007).

dissenting from denial of reh'g en banc). And the majority's opinion departs from settled Supreme Court authority protecting private entities' choices about whether and how to publish and disseminate speech. *See infra* pp.11-14. *See also* Appl., 2022 WL 1559655, at *18-19. That "conflict" calls out for Supreme Court review. Sup. Ct. R. 10(a).

**B. HB20 Section 2's Operational and Disclosure Provisions.** This Court's analysis of HB20 Section 2's operational and disclosure provisions conflicts with the Eleventh Circuit's evaluation of a provision under Florida law raising similar issues.

The Eleventh Circuit held that Florida's provision requiring websites to provide "detailed justification for every content-moderation action" was "'practically impossible to satisfy,'" "unduly burdensome," and "likely to chill platforms' protected speech." *Moody*, 34 F.4th at 1230 (cleaned up). The "targeted platforms remove millions of posts per day" and thus Florida's disclosure requirement "imposes potentially significant implementation costs." *Id.* Moreover, such disclosures do not "provide users with helpful information that prevents them from being misled about platforms' policies." *Id.* at 1227.

In contrast, this Court upheld provisions requiring websites to provide users with detailed justifications for every editorial action. Op.73-79. Those provisions include Section 2's requirements to (1) adopt specific notice-complaint-appeal procedures for users to challenge millions of daily editorial decisions, Tex. Bus. & Com. Code §§120.101-104; (2) publish a "biannual

7

transparency report" about "each tool, practice, action, or technique used" when websites enforce their policies across billions of pieces of expression, *id.* §120.053; and (3) publish "content management, data management, and business practices" disclosures requiring undefined descriptions of every aspect of covered websites' businesses, *id.* §120.051. Plaintiffs provided unrebutted record evidence that many provisions would be burdensome and costly to implement. *See* ROA.214-15; ROA.227; ROA.2591. Indeed, some of Plaintiffs' declarants expressed skepticism that those changes would be possible under the websites' current capabilities. ROA.1160, ROA.1175. In response, this Court held that a disclosure provision's financial and litigation burden is not a relevant factor for courts to consider. *See* Op.76 (dismissing "technical, economic, or operational burdens").

In addition to the direct conflict between this Court and the Eleventh Circuit, this Court's decision further exacerbates acknowledged confusion about the applicability of *Zauderer v. Office of Disciplinary Counsel of Supreme Court of Ohio*'s standard for compelled commercial speech. 471 U.S. 626, 651 (1985). As the D.C. Circuit recognized, there is a "conflict in the circuits regarding the reach of *Zauderer.*" *Nat'l Ass'n of Mfrs. (NAM) v. SEC*, 800 F.3d 518, 524 (D.C. Cir. 2015) (collecting cases). This Court's decision implicates, but does not address, many thorny questions and areas of confusion, including: (1) whether *Zauderer* applies outside the context of "commercial speech"

"advertisements";[3] (2) what makes a disclosure "factual" and "uncontroversial";[4] (3) whether government may compel speech for reasons other than "preventing deception of consumers";[5] (4) whether financial burdens and litigation risk can make a disclosure "unduly burdensome";[6] and (5) what standard of review applies if *Zauderer* does not.[7] *Zauderer*, 471 U.S. at 651.

---

[3] *Compare, e.g., NAM*, 800 F.3d at 523 ("[T]he Supreme Court has refused to apply *Zauderer* when the case before it did not involve voluntary commercial advertising."); *Am. Beverage Ass'n v. City & Cnty. of San Francisco*, 916 F.3d 749, 763 (9th Cir. 2019) (en banc) (Ikuta, J., concurring in the judgment) ("whether the notice requirement applies to commercial advertising" is a "threshold question regarding *Zauderer*'s applicability"), *with CTIA—The Wireless Ass'n v. City of Berkeley*, 928 F.3d 832, 843 (9th Cir. 2019) [hereinafter "*CTIA II*"] (applying *Zauderer* beyond voluntary commercial advertising).

[4] *Compare, e.g., Am. Meat Inst. v. U.S. Dep't of Agric.*, 760 F.3d 18, 27 (D.C. Cir. 2014) (compelled speech can be unconstitutionally "controversial for some reason other than dispute about simple factual accuracy"), *with CTIA—The Wireless Ass'n v. City of Berkeley*, 854 F.3d 1105, 1117 (9th Cir. 2017) (relying on literal factual accuracy).

[5] *Compare, e.g., Recht v. Morrisey*, 32 F.4th 398, 417 (4th Cir. 2022) (limiting disclosures to remedying consumer deception), *with CTIA II*, 928 F.3d at 844 (non-deception interest).

[6] *Compare, e.g., Cal. Chamber of Commerce v. Council for Educ. & Research on Toxics*, 29 F.4th 468, 479 (9th Cir. 2022) (economic costs like litigation risk are relevant to burden), *with Am. Hosp. Ass'n v. Azar*, 983 F.3d 528, 541 (D.C. Cir. 2020) (only direct burdens on speech are relevant).

[7] *Compare, e.g., Disc. Tobacco City & Lottery, Inc. v. United States*, 674 F.3d 509, 554 (6th Cir. 2012) (applying strict scrutiny), *with R.J. Reynolds Tobacco Co. v.*

## II. There is a significant possibility Plaintiffs will prevail on the merits.

The Supreme Court's prior vacatur order in this case, *Paxton*, 142 S. Ct. at 1715-16, necessarily determined that Plaintiffs have a "fair prospect" of prevailing on the merits, *Hollingsworth*, 558 U.S. at 190, and that this case "present[s] a substantial question," Fed. R. App. P. 41(d)(1). In those emergency proceedings before the Supreme Court, both Plaintiffs and Defendant made similar arguments to those that they made before this Court. Thus, five Justices concluded that Plaintiffs met the *Hollingsworth* "fair prospect" standard after weighing the same arguments raised here. That alone is sufficient for this Court to stay its mandate, especially because Defendant does not oppose this motion.

**A. HB20 Section 7**. Section 7's regulation of websites' editorial discretion to choose what speech they publish and disseminate—and how—violates the First Amendment.

**1.** The majority here expressly disagreed (Op.83-85) with the Eleventh Circuit's central holding that "[s]ocial-media platforms like Facebook, Twitter, YouTube, and TikTok are private companies with First Amendment rights, and when they (like other entities) 'disclose,' 'publish,' or 'disseminate information,' they engage in 'speech within the meaning of the First

---

*Food & Drug Admin.*, 696 F.3d 1205, 12167 (D.C. Cir. 2012) (applying intermediate scrutiny).

Amendment.'" *Moody*, 34 F.4th at 1210 (cleaned up) (quoting *Sorrell v. IMS Health Inc.*, 564 U.S. 552, 570 (2011)).

The Eleventh Circuit's conclusion flows directly from the Supreme Court's seminal decision in *Reno v. ACLU*, which recognized that (1) Internet websites "'publish' information"; (2) disseminating speech through such websites is inherently "expressive"; and (3) there is "no basis for qualifying the level of First Amendment scrutiny that should be applied to this medium."[8] 521 U.S. 844, 853, 870 (1997).

**2.** Unlike the Eleventh Circuit, the majority here neither acknowledged *Reno* nor addressed the Supreme Court's holding that both publication and "dissemination" of speech are protected under the First Amendment. *Sorrell*, 564 U.S. at 570.[9] The majority's central holding is that the choices websites make about what speech they publish and how they disseminate that speech is "censorship" of others' speech amounting to unprotected "conduct."[10]

---

[8] Online publication, presentation, and mass dissemination of speech is what distinguishes websites and applications from "telephone companies or shipping services." Op.20.

[9] The Supreme Court has long rejected a narrow understanding of the First Amendment limited to prohibiting just "prior restraints." *Chaplinsky v. New Hampshire*, 315 U.S. 568, 572 n.3 (1942); *cf.* Op.19-38.

[10] Because Judge Jones did not join (Op.1 n.*) the common-carrier portions of Judge Oldham's opinion (Op.44-64, 88-89), the panel majority did not accept Defendant's common-carrier argument. The Eleventh Circuit rejected a nearly identical argument. *Moody*, 34 F.4th at 1219-21; *accord* Fla.Pet.16-17 (recognizing disagreement).

*E.g.*, Op.2, 7, 12-13, 16, 19-20, 30-31, 34-40. But the Supreme Court has long recognized that private entities have the right to "exercise editorial discretion over [] speech and speakers"—including when they "provide[] a forum for speech" generated by others. *Manhattan Cmty. Access Corp. v. Halleck*, 139 S. Ct. 1921, 1930 (2019).

The majority's conclusion in Part III.C that websites do not engage in protected editorial discretion depends on cabining certain Supreme Court precedents to their facts. Op.19-38 (discussing *Hurley v. Irish-Am. Gay, Lesbian & Bisexual Grp. of Boston*, 515 U.S. 557 (1995); *PG&E v. PUC of California*, 475 U.S. 1 (1986) (plurality op.); *Miami Herald Publ'g Co. v. Tornillo*, 418 U.S. 241 (1974)). As the Eleventh Circuit's analysis makes clear, *Moody*, 34 F.4th at 1210-19, there is at least a fair prospect that the Supreme Court will disagree with that approach. The Supreme Court has routinely recognized robust First Amendment protections for all decisions that private companies may make about what speech to publish and disseminate and how. *E.g.*, *Manhattan*, 139 S. Ct. at 1930; *Sorrell*, 564 U.S. at 570; *Bartnicki v. Vopper*, 532 U.S. 514, 527 (2001) ("disclosing and publishing information") (cleaned up); *Ark. Educ. TV Comm'n v. Forbes*, 523 U.S. 666, 674 (1998).[11]

---

[11] Here, the unrebutted record evidence demonstrates that websites engage in the kinds of editorial discretion the Supreme Court has held are protected, including a broad range of "*ex-ante*" editorial choices based on viewpoint—from posting policies about acceptable expression to immediately acting on

The majority in Part III.D further held that 47 U.S.C. § 230(c)(1) "reflects Congress's factual determination that the Platforms are not 'publishers.'" Op.41. But as this Court has recognized, § 230's liability protection exists precisely because the websites' decisions at issue here are "quintessentially related to the publisher's role." *Doe v. MySpace, Inc.*, 528 F.3d 413, 420 (5th Cir. 2008) (quoting *Green v. Am. Online (AOL)*, 318 F.3d 465, 471 (3d Cir. 2003)). The Supreme Court has held that Internet websites "publish" speech and receive full constitutional protection. *Reno*, 521 U.S. at 853, 870.

The majority also held that HB20 would satisfy intermediate scrutiny. Op.64-69. But even if the Supreme Court were to apply intermediate scrutiny, there is at least a fair prospect it would find HB20 unconstitutional. As the Eleventh Circuit explained: "[T]here's no legitimate—let alone substantial—governmental interest in leveling the expressive playing field. Nor is there a substantial governmental interest in enabling users . . . to say whatever they want on privately owned platforms that would prefer to remove their posts." *Moody*, 34 F.4th at 1228; *see* Fla.Pet.17 (observing that "the Fifth and Eleventh Circuits starkly broke on the States' interest in regulating the censorship of speech"). The majority also minimized HB20's 50-million-U.S.-users-per-month threshold. This feature renders HB20 a speaker-based regulation, which is "all too often simply a means to control content." *Citizens*

_____

submitted content before users see it. ROA.360-71; ROA.382-85; NetChoice, By the Numbers 5-6, https://bit.ly/3Gn54Hj; *cf.* Op.38 n.18.

*United v. FEC*, 558 U.S. 310, 340 (2010). And it shows HB20 is not properly tailored, as the Eleventh Circuit reasoned. *Moody*, 34 F.4th at 1228.[12]

**3.** Consequently, this Court's majority opinion "squarely conflicts" with the Eleventh Circuit's unanimous decision—as both the majority here (Op.83-85) and the Florida Attorney General (Fla.Pet.3, 13-18) have recognized. Thus, the differences the majority identified between Texas's and Florida's laws cannot explain the divergent results between the two courts.

The majority here distinguished the Florida law as content-based because it concluded that Florida's law "prohibits *all* censorship of *some* speakers, while HB 20 prohibits *some* censorship of *all* speakers." Op.80. Regardless of their precise contours, however, both laws prohibit exercises of editorial discretion. Thus the precise level of applicable First Amendment scrutiny was largely irrelevant to the Eleventh Circuit's analysis, which concluded "none of [Florida's] content-moderation restrictions survive intermediate—let alone strict—scrutiny." *Moody*, 34 F.4th at 1227. The Eleventh Circuit's conclusion was based on a lack of legitimate governmental interest and tailoring regarding which websites are covered—both equally applicable to HB20, as addressed above.

---

[12] The majority in Part III.A concluded that Plaintiffs have only brought an overbreadth challenge. Op.8-12. But Plaintiffs have consistently raised both a traditional "no-set-of-circumstances" facial challenge and an overbreadth challenge. *See* Appellees' Br.44 n.17; ROA.47-51, ROA.63; ROA.137; ROA.147, ROA.1645.

The majority here noted that Florida's law prohibited those websites from authoring speech, for instance, in the form of addenda to user-submitted expression. Op.80-81. Otherwise, both States' laws' definitions of prohibited "censorship" overlap substantially and prohibit a similarly broad range of editorial choices.[13] The majority also distinguished the different remedies that Texas and Florida have imposed for violations of their laws. Op.81. But in addition to fee shifting, HB20 permits courts to impose "daily penalties sufficient to secure immediate compliance." Tex. Civ. Prac. & Rem. Code §143A.007(c).

**B. HB20 Section 2**. Defendant does not oppose staying this Court's mandate in full, including with respect to HB20 Section 2's operational and disclosure provisions. And there is a fair prospect the Supreme Court will hold that HB20's operational and disclosure provisions are "unduly burdensome and likely to chill websites' protected speech," as the Eleventh Circuit reasoned. *Moody*, 34 F.4th at 1230.

The Court's *Zauderer* analysis concluded that websites are already capable of complying with Section 2's requirements. Op.74-77. But Plaintiffs

---

[13] *Compare* Tex. Civ. Prac. & Rem. Code §143A.001(1) ("censor" means to "block, ban, remove, deplatform, demonetize, de-boost, restrict, deny equal access or visibility to, or otherwise discriminate against expression"), *with* Fla. Stat. §501.2041(1)(b) ("censor" includes "any action taken by a social media platform to delete, regulate, restrict, edit, alter, inhibit the publication or republication of, suspend a right to post, remove, or post an addendum to any content or material posted by a user").

presented contrary record evidence and factual findings. *E.g.*, ROA.214-15; ROA.227; ROA.2591-92. For instance, complying with the biannual transparency report and the notice-complaint-appeal process for millions of editorial decisions would be, at a minimum, exorbitantly expensive. Appellees' Br.53-55. And Plaintiffs presented evidence that compliance with those provisions may be beyond their constituent members' current capabilities. *Id.*

Fundamentally, HB20 Section 2's requirements are not "laws that require professionals to disclose factual, noncontroversial information in their '*commercial speech*'" advertisements. *Nat'l Inst. of Family & Life Advocates v. Becerra*, 138 S. Ct. 2361, 2372 (2018) (emphasis added) (quoting *Zauderer*, 471 U.S. at 651); *see* Appl., 2022 WL 1559655, at *35-36. Instead, many of them require websites to overhaul aspects of their businesses and adapt new editorial processes to comply with the State's mandates.

## III. Plaintiffs will suffer irreparable harm absent a stay of the mandate.

The Supreme Court's vacatur order in this case, *Paxton*, 142 S. Ct. at 1715-16, necessarily determined that Plaintiffs' members "may be seriously and irreparably injured by" lifting the preliminary injunction and allowing Defendant to enforce HB20 while appellate procedures continue. *Teamsters*, 480 U.S. at 1305 (citation omitted). Briefing (both from Plaintiffs and amici) underlying the vacatur order explains, in more detail, the irreparable harms should HB20 become enforceable—and Plaintiffs summarize it below. *E.g.*, Appl., 2022 WL 1559655, at *39-42 (discussing irreparable harm).

16

The "loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury." *Roman Catholic Diocese of Brooklyn v. Cuomo*, 141 S. Ct. 63, 67 (2020) (per curiam) (citation omitted).

Compounding the constitutional harms, Plaintiffs' members would lose the goodwill that they have developed through their editorial efforts because their websites will become cesspools of expression that they and their users consider vile. *E.g.*, *J. M. Fields of Anderson, Inc. v. Kroger Co.*, 310 F.2d 562, 564 (5th Cir. 1962) (loss of goodwill is irreparable harm). HB20 will require these private companies to fundamentally transform the very nature of their websites and operations—undoing years of work and decisions that balance encouraging user expression with editorial responsibility. Consequently, these websites would sink untold amounts of effort and money into abandoning the practices they have crafted to fit their particular user communities and businesses. As the district court found, HB20 will further prohibit websites from using tools that "make their platforms safe, useful, and enjoyable for users" and will result in lost users and revenue. ROA.2599.

In the recent past, one of the measurable ways this loss of goodwill manifested was boycotts due to previous instances of harmful, offensive, extremist, and disturbing content found on covered websites—which caused users and advertisers to leave. YouTube in 2017 "lost millions of dollars in advertising revenue after a number of major corporations . . . took down their ads after seeing them distributed next to videos containing extremist content and hate speech," and Facebook in 2020 "saw a nearly identical response as some

of the largest businesses in the world … all pulled their ads and boycotted Facebook citing concerns of third parties' use of the website to spread hate speech and misinformation." ROA.188-89.

Furthermore, HB20 will require website owners and operators to immediately disclose competitively sensitive information. *E.g.*, ROA.23, ROA.202-04, ROA.226-27. This will reveal details that would further enable bad actors to circumvent the websites' existing abuse-prevention systems—which also represent years of work and investment to prevent spam, harassment, and other harmful acts.

Unrebutted record evidence also demonstrates that attempting compliance with HB20 will require websites to incur massive nonrecoverable financial injuries while—overnight—abandoning processes they created at significant expense over many years of iterative development. *E.g.*, ROA.203; ROA.221. These are cognizable irreparable injuries. *E.g.*, *Ala. Ass'n of Realtors v. Dep't of Health & Human Servs.*, 141 S. Ct. 2485, 2489 (2021) (per curiam); *Chamber of Commerce v. EPA*, 577 U.S. 1127, 1127 (2016); *BST Holdings, L.L.C. v. OSHA*, 17 F.4th 604, 618 (5th Cir. 2021).

As Facebook's declarant testified, even if given 10 years, "I think that we would not be able to comply in a meaningful way with these issues without undoing the whole way that we do business." ROA.1175; *accord* ROA.1174 ("[I]t would be such an undoing of the way that we moderate content, the way these systems have been built, the investments that have been made[.] … I'm pretty confident it's a practical impossibility."). He estimated that,

because Facebook "spent billions of dollars" on developing its editorial discretion tools since 2016, Facebook would need to "invest nearly as much to be able to comply with all that would undo our systems in such a fundamental way." ROA.1160.

To forestall these irreparable injuries, this Court should therefore preserve the status quo while the Supreme Court considers the important constitutional questions presented by this case.

## Conclusion

Plaintiffs respectfully request that this Court stay its mandate pending Plaintiffs' forthcoming petition for a writ of certiorari in the U.S. Supreme Court and any further proceedings in the Supreme Court.

DATED: September 29, 2022

Steven P. Lehotsky
Jeremy Evan Maltz
Gabriela Gonzalez-Araiza
LEHOTSKY KELLER LLP
200 Massachusetts Avenue, NW
Washington, DC 20001

Katherine C. Yarger
LEHOTSKY KELLER LLP
700 Colorado Blvd., #407
Denver, CO 80206

Respectfully submitted,
*/s/ Scott A. Keller*

Scott A. Keller
Matthew H. Frederick
Todd Disher
LEHOTSKY KELLER LLP
919 Congress Ave.
Austin, TX 78701
scott@lehotskykeller.com
(512) 693-8350

*Counsel for Plaintiffs-Appellees*

## CERTIFICATE OF SERVICE

On September 29, 2022, this motion was served via CM/ECF on all registered counsel and transmitted to the Clerk of the Court. Counsel further certifies that: (1) any required privacy redactions have been made in compliance with Fifth Circuit Rule 25.2.13; and (2) the document has been scanned with the most recent version of a commercial virus scanning program and is free of viruses. No paper copies were filed in accordance with the COVID-19 changes ordered in General Docket No. 2020-3.

*/s/ Scott A. Keller*
Scott A. Keller

## CERTIFICATE OF COMPLIANCE

This motion complies with: (1) the type-volume limitation of Federal Rule of Appellate Procedure 27(d)(2) because it contains 4435 words, excluding the parts of exempted by Rule 32(f); and (2) the typeface requirements of Rule 32(a)(5) and the type style requirements of Rule 32(a)(6) because it has been prepared in a proportionally spaced typeface (14-point Palatino Linotype) using Microsoft Word (the same program used to calculate the word count).

*/s/ Scott A. Keller*
Scott A. Keller

## CERTIFICATE OF CONFERENCE

On September 28, 2022, counsel for Plaintiffs-Appellees conferred with counsel for Defendant-Appellant, who advised that Defendant-Appellant does not oppose the relief requested in this motion on the condition that Plaintiffs do not seek an extension of time to file a petition for certiorari in the Supreme Court. Plaintiffs have agreed to that condition, so this motion is unopposed.

/s/ *Scott A. Keller*
Scott A. Keller