No. 21-51178

# In the United States Court of Appeals for the Fifth Circuit

NETCHOICE, L.L.C., A 501(C)(6) DISTRICT OF COLUMBIA ORGANIZATION DOING BUSINESS AS NETCHOICE; COMPUTER & COMMUNICATIONS INDUSTRY ASSOCIATION, A 501(C)(6) NON-STOCK VIRGINIA CORPORATION DOING BUSINESS AS CCIA,

*Plaintiffs-Appellees*,

*v.*

KEN PAXTON, IN HIS OFFICIAL CAPACITY AS ATTORNEY GENERAL OF TEXAS,

*Defendant-Appellant*.

On Appeal from the United States District Court
for the Western District of Texas, Austin Division
Civil Action No. 1:21-cv-00840-RP

**OPPOSED MOTION OF APPELLEES FOR
SUPPLEMENTAL BRIEFING AND ORAL ARGUMENT**

Pursuant to Federal Rule of Appellate Procedure 27 and Fifth Circuit Rule 27, Appellees NetChoice, LLC ("NetChoice") and Computer & Communications Industry Association ("CCIA") respectfully move the Court to set a schedule for supplemental briefing and oral argument in this appeal on remand from the Supreme Court. Pursuant to Fifth Circuit Rule 27.4, Appellees state that counsel for Appellant has represented that it opposes this motion.

1. Appellees NetChoice and CCIA are trade associations whose members include providers of "social media platforms" subject to regulation under Texas House Bill 20 ("HB20"). Tex. Civ. Prac. & Rem. Code § 143A.002; Tex. Bus. & Com. Code §§ 120.051-.053, 120.101-.104. In this lawsuit, Appellees allege, among other claims, that HB20 Sections 2 and 7 are facially invalid under the First Amendment, because they impose content-, speaker-, and viewpoint-based speech regulations, and because they infringe on covered websites' constitutionally protected editorial discretion.

2. The district court preliminarily enjoined HB20 Sections 2 and 7, determining that Appellees' First Amendment claims were "likely to succeed because the statute infringes on the constitutionally protected 'editorial judgment' of [their] members about what material they will display." *Moody v. NetChoice, LLC*, 144 S. Ct. 2383, 2396 (2024) (citing *NetChoice, LLC v. Paxton*, 573 F. Supp. 3d 1092, 1107 (W.D. Tex. 2021)).

3. This Court reversed the preliminary injunction on appeal. It held that HB20 did not violate the First Amendment, because Appellees' members were not engaged in speech, and even if they were, Section 7 satisfied intermediate scrutiny, and Section 2 required only limited disclosure of factual information similar to what members already provided. *NetChoice, L.L.C. v. Paxton*, 49 F.4th 439, 482, 488 (5th Cir. 2022).

4. The Supreme Court vacated this Court's judgment in *Moody*, 144 S. Ct. at 2409. The Supreme Court held that "when applied . . . to prevent Facebook (or YouTube) from using its content-moderation standards to

remove, alter, organize, prioritize, or disclaim posts in its News Feed (or homepage)," HB20 Section 7 "prevents exactly the kind of editorial judgments this Court has previously held to receive First Amendment protection." *Id.* at 2398. "When the platforms use their Standards and Guidelines to decide which third-party content those feeds will display, or how the display will be ordered and organized, they are making expressive choices. And because that is true, they receive First Amendment protection." *Id.* at 2406. Thus, to the extent that HB20 "prohibits the large social-media platforms (and maybe other entities) from 'censor[ing]' a 'user's expression' based on its 'viewpoint,'" *Moody*, 144 S. Ct. at 2404 (quoting Tex. Civ. Prac. & Rem. Code § 143A.002(a)(2)), it "interfere[s] with protected speech," *id.* at 2405. This Court was therefore "wrong in concluding that Texas's restrictions on the platforms' selection, ordering, and labeling of third-party posts do not interfere with expression," and "wrong to treat as valid Texas's interest in changing the content of the platforms' feeds." *Id.* at 2399. The Supreme Court concluded that "Texas is not likely to succeed in enforcing its law against the platforms' application of their content-moderation policies to the feeds that were the focus of the proceedings below." *Id.* at 2403.

5.  Regarding HB20 Section 2's notice-complaint-appeal requirements (or "individualized-explanation provisions"), the Supreme Court held that "our explanation of why Facebook and YouTube are engaged in expression when they make content-moderation choices in their main feeds

3

should inform the courts' further consideration" of whether these provisions "unduly burden expressive activity." *Id.* at 2399 n.3.

6. The Supreme Court vacated and remanded "for the Fifth Circuit to decide" the "requisite facial analysis" for this challenge to HB20 Sections 2 and 7. *Moody*, 144 S. Ct. at 2409. To do so, this Court "must determine [HB20's] full set of applications, evaluate which are constitutional and which are not, and compare the one to the other." *Id.* at 2394. Among other questions, the Court must consider whether "content-moderation choices reflected in Facebook's News Feed and YouTube's homepage . . . *are* the principal things regulated, and should have just that weight in the facial analysis." *Id.* at 2398.

7. Appellees respectfully request that this Court permit the parties to submit supplemental briefing on remand from the Supreme Court and that the case be set for oral argument. *Moody* directed this Court to "explore [HB20's] full range of applications—the constitutionally impermissible and permissible both—and compare the two sets." *Id.* at 2398. Appellees respectfully suggest that additional briefing and argument will assist the Court in fulfilling the Supreme Court's mandate to conduct the facial-challenge analysis of HB20 Sections 2 and 7.

8. Appellees therefore propose that the parties submit simultaneous supplemental briefs of no more than 9,000 words within 30 days after the Court's disposition of this motion, followed by the parties submitting simultaneous response briefs of no more than 4,500 words within 30 days

after the initial supplemental briefs. If the Court agrees that oral argument is warranted, the case can be set for argument in the ordinary course.

9. For all these reasons, Appellees respectfully move the Court to grant this motion and set a supplemental briefing schedule and oral argument date for this case.

10. Pursuant to Fifth Circuit Rule 27.4, Appellees state that the Office of the Attorney General respectfully opposes this motion and defers to the Court's judgment as to what process would best aid the Court's decision-making.

| | |
|---|---|
| DATED: August 2, 2024 | Respectfully submitted,<br>*/s/ Scott A. Keller* |
| Steven P. Lehotsky | Scott A. Keller |
| Jeremy Evan Maltz | Matthew H. Frederick |
| Gabriela Gonzalez-Araiza | Todd Disher |
| LEHOTSKY KELLER COHN LLP | LEHOTSKY KELLER COHN LLP |
| 200 Massachusetts Avenue, NW | 408 West 11th Street, 5th Floor |
| Washington, DC 20001 | Austin, TX 78701 |
| | scott@lkcfirm.com |
| | (512) 693-8350 |
| | *Counsel for Plaintiffs-Appellees* |

## Certificate of Service

On August 2, 2024, this brief was served via CM/ECF on all registered counsel and transmitted to the Clerk of the Court. Counsel further certifies that: (1) any required privacy redactions have been made in compliance with Fifth Circuit Rule 25.2.13; and (2) the document has been scanned with the most recent version of a commercial virus scanning program and is free of viruses. No paper copies were filed in accordance with the COVID-19 changes ordered in General Docket No. 2020-3.

*/s/ Scott A. Keller*
Scott A. Keller

## Certificate of Compliance

This brief complies with: (1) the type-volume limitation of Federal Rule of Appellate Procedure 27(d)(2)(A) and Fifth Circuit Rule 27.4 because it contains 890 words; and (2) the typeface requirements of Rule 32(a)(5) and the type style requirements of Rule 32(a)(6) because it has been prepared in a proportionally spaced typeface (14-point Palatino Linotype) using Microsoft Word (the same program used to calculate the word count).

*/s/ Scott A. Keller*
Scott A. Keller