# United States Court of Appeals for the Fifth Circuit

United States Court of Appeals
Fifth Circuit
**FILED**
September 18, 2024
Lyle W. Cayce
Clerk

No. 21-51178

_____

NETCHOICE, L.L.C., *a 501(c)(6) District of Columbia organization doing business as* NETCHOICE; COMPUTER & COMMUNICATIONS INDUSTRY ASSOCIATION, *a 501(c)(6) non-stock Virginia Corporation doing business as* CCIA,

                 *Plaintiffs—Appellees*,

*versus*

KEN PAXTON, *in his official capacity as Attorney General of Texas*,

                 *Defendant—Appellant*.

_____

Appeal from the United States District Court
for the Western District of Texas
USDC No. 1:21-CV-840

_____

ON REMAND FROM
THE SUPREME COURT OF THE UNITED STATES

Before JONES, SOUTHWICK, and OLDHAM, *Circuit Judges*.

PER CURIAM:

  In *Moody v. NetChoice, LLC*, 144 S. Ct. 2383 (2024), the Supreme Court issued five separate opinions. The Justices unanimously agreed on at least three propositions.

*First*, all nine Justices emphasized that plaintiffs' choice to bring a facial challenge to Texas's House Bill 20 ("H.B. 20") came with a heavy burden of proof. As the majority opinion explained: "These are facial challenges, and that matters" because "facial challenges are disfavored." *Id.* at 2408–09. The majority opinion further explained:

> NetChoice chose to litigate these cases as facial challenges, and that decision comes at a cost. . . . Claims of facial invalidity often rest on speculation about the law's coverage and its future enforcement. And facial challenges threaten to short circuit the democratic process by preventing duly enacted laws from being implemented in constitutional ways. This Court has therefore made facial challenges hard to win.

*Id.* at 2397 (quotations omitted). All four other opinions echoed this point. *See id.* at 2409 (Barrett, J., concurring) ("[T]hese cases illustrate the dangers of bringing a facial challenge. . . . In fact, dealing with a broad swath of varied platforms and functions in a facial challenge strikes me as a daunting, if not impossible, task."); *id.* at 2411 (Jackson, J., concurring in part and concurring in the judgment) ("[A]s all Members of the Court acknowledge, plaintiffs bringing a facial challenge must clear a high bar."); *id.* at 2428 (Alito, J., concurring in the judgment) ("Facial challenges also strain the limits of the federal courts' constitutional authority to decide only actual 'Cases' and 'Controversies,'" so "parties mounting facial attacks [must] satisfy demanding requirements."). Justice Thomas would have gone further and held that facial challenges "are fundamentally at odds with Article III" and that their "dubious historical roots further confirm that the doctrine should have no place in our jurisprudence." *Id.* at 2413–14 (Thomas, J., concurring in the judgment).

*Second*, all nine Justices concluded that plaintiffs failed to produce facts sufficient to carry their burden. The majority opinion explained that

"the record is undeveloped," and that "there is much work to do below . . . , given the facial nature of NetChoice's challenges," to develop a factual record regarding "the full range of activities the laws cover," *id.* at 2394, 2397, 2399 (majority opinion). Again, the other Justices echoed that criticism of the record produced by plaintiffs. *See, e.g.*, *id.* at 2410–11 (Barrett, J., concurring) (noting the record failed to "thoroughly expose[] the relevant facts about particular social-media platforms and functions"); *id.* at 2411 (Jackson, J., concurring in part and concurring in the judgment) (noting plaintiffs failed to show "how the regulated activities *actually function*"); *id.* at 2412 (Thomas, J., concurring in the judgment) (noting plaintiffs "failed to provide many of the basic facts necessary to evaluate their challenges to [Texas's] H.B. 20"); *id.* at 2422 (Alito, J., concurring in the judgment) (noting "NetChoice failed to prove that the Florida and Texas laws they challenged are facially unconstitutional").

*Third*, all nine Justices agreed that First Amendment facial overbreadth cases turn on math. We must "determine [HB 20's] *full* set of applications, evaluate which are constitutional and which are not, and compare the one to the other." *Id.* at 2394 (majority opinion) (emphasis added); *see also id.* at 2397–98 (emphasizing that courts must "address the full range of activities the laws cover, and measure the constitutional against the unconstitutional applications"); *id.* at 2430 (Alito, J., concurring in the judgment). In other words, a court must count all the statute's applications. That is the common denominator. Then, a court must calculate the statute's unconstitutional applications and its constitutional ones. That yields two numerators. Finally, a court must compare the two fractions and hold the statute facially unconstitutional "only if the law's unconstitutional applications substantially outweigh its constitutional ones." *Id.* at 2397 (majority opinion); *see also id.* at 2430 (Alito, J., concurring in the judgment) (explaining that plaintiffs are "required to identify" both the "numerator (the number of

No. 21-51178

unconstitutional applications) and denominator (the total number of possible applications)" to succeed on a facial overbreadth challenge).

*

After the Supreme Court's decision, NetChoice and the Computer & Communications Industry Association (collectively "NetChoice") filed an opposed motion for supplementary briefing in this court. NetChoice appears to believe that we can do the math problem without remanding to the district court. As NetChoice put it, "*Moody* directed *this Court* to 'explore [H.B. 20's] full range of applications—the constitutionally impermissible and permissible both—and compare the two sets.'" Plaintiffs' Mot. at 4 (emphasis added) (quoting *Moody*, 144 S. Ct. at 2398 (majority opinion)).

But the unfortunate posture of this case stems from the fact that NetChoice steadfastly opposed (and the district court blocked) the very discovery that *Moody* appears to require. In the district court, "[p]laintiffs argue[d] that *no* discovery [wa]s necessary because the issues [we]re purely legal questions." ROA.619 (emphasis added) (quotation and citation omitted). And the district court largely agreed with that, requiring the State of Texas to complete discovery in a mere 30 days to avoid "burden[ing] [p]laintiffs without good cause." ROA.621. We now know, however, that to support a facial injunction, NetChoice must show:

- "[W]hat actors" are covered by H.B. 20? *See Moody*, 144 S. Ct. at 2398.

- For each covered actor, which activities or services are covered by H.B. 20: "To what extent, if at all, do the laws affect . . . services, like direct messaging or events management?" *Ibid.* For example, does H.B. 20 affect "how an email provider like Gmail filters incoming messages, how an online marketplace like Etsy displays customer reviews, how a payment service like

4

Venmo manages friends' financial exchanges, or how a ride-sharing service like Uber runs?" *Ibid.*

- How does each covered actor moderate content on each covered platform, and how much of that content discrimination is protected by the First Amendment? For example, the Supreme Court repeatedly discussed Plaintiffs' content-moderation algorithms in the various *Moody* opinions. *See, e.g.*, *id.* at 2404 n.5 (majority opinion); *id.* at 2410 (Barrett, J., concurring); *id.* at 2424, 2426–27, 2436–37 (Alito, J., concurring in the judgment). The district court, however, denied Texas's request for discovery of the "precise technical nature of the computer files at issue." ROA.539 (quotation omitted). *Moody* appears to require precisely that level of detail. *See Moody*, 144 S. Ct. at 2411 (Barrett, J., concurring) ("[T]he analysis is bound to be fact intensive, and it will surely vary from function to function and platform to platform.").

It is thus unclear how we can avoid remanding this case to the district court. Still, NetChoice thinks we can. And the State opposed resolving the case on supplemental briefs—but did not file an opposition to explain why.

It is therefore ORDERED that the parties file supplemental briefs, not to exceed ten pages, by September 25, 2024. The briefs must explain whether this case can be resolved on the present record and without remanding for additional discovery.