No. 21-51178

# In the United States Court of Appeals for the Fifth Circuit

NetChoice, L.L.C., a 501(c)(6) District of Columbia organization doing business as NetChoice; Computer & Communications Industry Association, a 501(c)(6) non-stock Virginia Corporation doing business as CCIA,

*Plaintiffs-Appellees*,

*v.*

Ken Paxton, in his official capacity as Attorney General of Texas,

*Defendant-Appellant.*

On Appeal from the United States District Court
for the Western District of Texas, Austin Division

## SUPPLEMENTAL BRIEF FOR APPELLANT

Ken Paxton
Attorney General of Texas

Brent Webster
First Assistant Attorney General

Ryan S. Baasch
Associate Deputy Attorney General
for Civil Litigation

Office of the Attorney General
P.O. Box 12548 (MC 059)
Austin, Texas 78711-2548
Tel.: (512) 936-1700
Fax: (512) 474-2697

Aaron L. Nielson
Solicitor General
Aaron.Nielson@oag.texas.gov

William F. Cole
Deputy Solicitor General

Counsel for Defendant-Appellant
Ken Paxton, Attorney General
of Texas

# Table of Contents

Table of Authorities ........ ii
Introduction ........ 1
Background ........ 2
Argument ........ 3
I. The Appeal Should be Remanded for Additional Discovery. ........ 3
II. The Court Should Streamline the Litigation by Requiring the District Court to Address Certain Issues on Remand. ........ 5
A. Associational standing ........ 5
B. Regulation of conduct ........ 6
C. Section 230 ........ 7
D. Severability ........ 9
III. The Court Should Clarify Three Additional Points. ........ 9
Conclusion ........ 10
Certificate of Service ........ 12
Certificate of Compliance ........ 12

# TABLE OF AUTHORITIES

**Page(s)**

**Cases:**

*303 Creative LLC v. Elenis*,
600 U.S. 570 (2023) .......... 7
*Anderson v. TikTok*,
No. 22-3061, 2024 WL 3948248 (3d Cir. Aug. 27, 2024) .......... 7, 8
*Ass'n of Am. Physicians & Surgeons, Inc. v. Tex. Med. Bd.*,
627 F.3d 547 (5th Cir. 2010) .......... 5
*Builder Recovery Servs., LLC v. Town of Westlake*,
650 S.W.3d 499 (Tex. 2022) .......... 9
*Citizens United v. FEC*,
558 U.S. 310 (2010) .......... 8
*Daves v. Dallas County*,
22 F.4th 522 (5th Cir. 2022) (en banc) .......... 10
*Hunt v. Wash. St. Apple Advert. Comm'n*,
432 U.S. 333 (1977) .......... 5
*Leavitt v. Jane L.*,
518 U.S. 137 (1996) (per curiam) .......... 9
*Moody v. NetChoice, LLC*,
144 S.Ct. 2383 (2024) .......... 2, 3, 4, 5, 6, 7, 8, 9, 10
*Netchoice v. Bonta*,
No. 23-2969, 2024 WL 3838423 (9th Cir. Aug. 16, 2024) .......... 3
*NetChoice, LLC v. Paxton*,
49 F.4th 439 (5th Cir. 2022) .......... 2, 6, 8, 10
*Royal Ins. Co. of Am. v. Quinn-L Capital Corp.*,
3 F.3d 877 (5th Cir. 1993) .......... 9
*State of Texas v. DHS*,
No. 23-50869 (5th Cir. Jan. 26, 2024), ECF No. 117-1 .......... 10
*Winter v. Nat. Res. Def. Council, Inc.*,
555 U.S. 7 (2008) .......... 3

**Statutes:**

47 U.S.C.:
§ 230 .......... 7, 8, 9
§ 230(c)(1) .......... 1, 8
§ 230(f)(3) .......... 8

Tex. Civ. Prac. & Rem. Code:
§ 143A.002(a)(1) .......... 6
§ 143A.002(a)(3) .......... 6
§ 143A.002(b) .......... 7

**Other Authorities:**

*Moody v. NetChoice, LLC*, No. 22-277, Oral Arg. Tr. (U.S. Feb. 26, 2024) .......... 8
*NetChoice, LLC v. Paxton*, No. 22-555, Oral Arg. Tr. (U.S. Feb. 26, 2024) .......... 8
*Taylor v. Twitter, Inc.*, Tr. Hr'g, No. CGC-18-564460 (Cal. Super. Ct. S.F. Cnty., June 14, 2018) .......... 7

## Introduction

Pursuant to this Court's September 18, 2024 Order, Appellant the Attorney General of Texas submits this brief to "explain whether this case can be resolved on the present record and without remanding for additional discovery." Order at 5. As set forth below, the answer is: No—this case should be remanded for the limited purpose of conducting additional discovery that is necessary for the district court, and thereafter this Court, to properly assess Appellees' facial challenge.

In addition, to streamline proceedings, the Attorney General respectfully urges that the Court's remand order provide instructions clarifying the following matters: *First*, the district court should consider anew whether the Appellees have associational standing given the member-specific factual discovery that must occur under the Supreme Court's analysis. *Second*, any calculation of H.B. 20's constitutional versus unconstitutional applications must account for certain provisions and applications for which only conduct—not speech—is at issue. *Third*, for each of their functionalities, Appellees' members must choose a single theory: Does 47 U.S.C. §230(c)(1) provide immunity for the content *or* do Appellees' members have First Amendment rights respecting that content? Clarifying what theory Appellees are pursuing may inform discovery and simplify litigation. And *fourth*, at a minimum, the district court should apply H.B. 20's broad severability provision.

Finally, three housekeeping matters warrant this Court's attention. *First*, under the law-of-the-case doctrine, the district court cannot reinstate an injunction regarding H.B. 20 provisions this Court upheld and for which the Supreme Court denied certiorari. *Second*, although the Court must vacate the district court's injunction, the

Attorney General does not oppose—except for those aspects of H.B. 20 for which the Supreme Court denied certiorari—an administrative stay regarding on-platform expression pending remand proceedings. And *third*, the panel should retain jurisdiction over future appellate proceedings arising out of its remand order.

## Background

H.B. 20 is a broad statute that applies to many of Appellees' members' functionalities, but Appellees choose to litigate this pre-enforcement challenge facially rather than as-applied. Instead of rigorously considering whether "the law's unconstitutional applications substantially outweigh its constitutional ones," *Moody v. NetChoice, LLC*, 144 S.Ct. 2383, 2397 (2024), or even allowing the parties to engage in adequate discovery, the district court facially enjoined enforcement of *all* provisions and applications of H.B. 20. On appeal, this Court reiterated the demanding standard for bringing a facial challenge and held that Appellees did not meet it. *See NetChoice, LLC v. Paxton*, 49 F.4th 439, 449-50 & n.4 (5th Cir. 2022). The Supreme Court granted certiorari with respect to certain aspects of this Court's decision but denied certiorari regarding H.B. 20's general-disclosure requirements, which each member of this panel concluded are constitutional.

The Supreme Court held that failure to engage in a functionality-by-functionality and application-by-application analysis is legal error. *See Moody*, 144 S.Ct. at 2397-98. Because of that threshold error, the Supreme Court did not resolve, for example, whether platforms speak when they use "algorithms [that] respond solely to how users act online." *Id.* at 2404 n.5. Although some Justices suggested they do not, *see id.* at 2409-10 (Barrett, J., concurring) (distinguishing algorithms that implement

"human being" content-curation from those that "present[] automatically to each user whatever the algorithm thinks the user will like"); *id.* at 2430-31 (Alito, J., concurring in the judgment) (similar), all agreed that before such questions can be answered, courts must first focus on "how the regulated activities *actually function*," *id.* at 2411-12 (Jackson, J., concurring in part); *see also* Order at 2-3.

## Argument

### I. The Appeal Should be Remanded for Additional Discovery.

The Court's Order asks "whether this case can be resolved on the present record and without remanding for additional discovery." Order at 5. It cannot. After all, "*the record is incomplete* even as to the major social-media platforms' main feeds, much less the other applications that must now be considered." *Moody*, 144 S.Ct. at 2403 (emphasis added); *see also id.* at 2411 (Barrett, J., concurring) ("[T]he analysis is bound to be fact intensive, and it will surely vary from function to function and platform to platform."); *Netchoice v. Bonta*, No. 23-2969, 2024 WL 3838423, at *14 (9th Cir. Aug. 16, 2024) (remanding in the light of *Moody* "to determine the full range of activities the law covers" (alterations omitted)). Accordingly, because the district court did not conduct the appropriate analysis, it committed legal error and this Court must vacate its injunction. *See, e.g.*, *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 26 (2008) (vacating preliminary injunction where court applied wrong standard and offered merely "cursory" analysis of relevant factors).

Based on their previous proposal for substantial briefing in this Court, Appellees may argue that this Court should conduct the necessary facial analysis and that it has an adequate record to do so. As this Court has explained, however, Appellees

"steadfastly opposed (and the district court blocked) the very discovery that" could have created an adequate record. Order at 4. And that opposition was based on arguments that the Supreme Court has now squarely rejected, including:

- Appellees argued that this case does "not depend on the resolution of *any* particular fact disputes." ROA.572. In fact, the "variegated" online world, "encompassing an ever-growing number of apps, services, functionalities, and methods" requires resolution of substantial factual issues. *Moody*, 144 S.Ct. at 2398.
- Appellees also argued "[t]here is no need for *any* discovery … because the issues are purely legal questions." ROA.574. In fact, the "analysis is bound to be fact intensive." *Moody*, 144 S.Ct. at 2411 (Barrett, J., concurring).
- Appellees resisted whether the "technical aspects of content-moderation practices is at all relevant." ROA.578. In fact, how their members' platforms work—including their algorithms—may well "have constitutional significance." *Moody*, 144 S.Ct. at 2410 (Barrett, J., concurring); *see also id.* at 2404 n.5 (maj. op.).

Unfortunately, Appellees' misguided arguments persuaded the district court to sharply limit discovery. The Attorney General sought comprehensive discovery to explore Appellees' concession that "each covered platform provides its users a *distinctive* experience," and how Appellees' "members moderate content using either unique algorithms, personnel or a combination of the two." ROA.538, 540; *see also* ROA.551, 558-59, 564. And the Attorney General explained that "each of Plaintiffs' claims requires an inquiry into, and assessment of, every one of their members' knowledge, practices, source codes and capabilities to determine how H.B. 20 is unlawful as applied to their specific company." ROA.544. But the district court ordered

that the Attorney General "cannot … request all of the discovery proposed" and provided only 30 days for "significantly tailored" discovery. ROA.621.

Appellees might also argue that discovery is unnecessary because the *Moody* majority—in dicta—rejected the State interest supporting H.B. 20. *See Moody*, 144 S.Ct. at 2407; *see also id.* at 2422 (Alito, J., concurring in judgment) (explaining why that analysis is dicta). Yet the majority limited its discussion to "Facebook's and YouTube's main feeds," and clarified that "[n]othing said here addresses any of the laws' other applications." *Id.* at 2399. Moreover, by definition, such analysis is irrelevant to any provisions and applications of H.B. 20 governing conduct rather than speech. Accordingly, meaningful, in-depth discovery into each application of H.B. 20 with respect to each of Appellees' members' functionalities is necessary.

## II. The Court Should Streamline the Litigation by Requiring the District Court to Address Certain Issues on Remand.

In its remand order, the Court should also streamline resolution of this litigation by ordering focused attention on certain issues of continued disagreement.

### A. Associational standing

Because so much member-specific factual development must occur, Appellees' "facial challenge to [H.B. 20] likely" has "force[d]" them "to bite off more than [they] can chew." *Id.* at 2411 (Barrett, J., concurring). Indeed, their theory of associational standing requires that "neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit." *Ass'n of Am. Physicians & Surgeons, Inc. v. Tex. Med. Bd.*, 627 F.3d 547, 550 (5th Cir. 2010) (citing *Hunt v. Wash. St. Apple Advert. Comm'n*, 432 U.S. 333, 343 (1977)); *see also* ROA.21.

It is now clear, however, that the participation of individual members will almost certainly be required under *Moody*. After all, the First Amendment analysis "will surely vary from function to function and platform to platform." *Moody*, 144 S.Ct. at 2411 (Barrett, J., concurring). And courts must consider, "[f]or *each covered actor*, which activities or services are covered by H.B. 20" in addition to how "*each covered actor* moderate[s] content on *each covered platform* …." Order at 4-5 (emphasis added). The Court should order the district court to dismiss this litigation for lack of associational standing if it proves to be the case that adequate, comprehensive discovery is impossible without the participation of Appellees' individual members.

### B. Regulation of conduct

As the Court has explained, certain provisions and applications of H.B. 20 indisputably regulate conduct, not speech, such as H.B. 20's bar on Appellees' members discriminating based on "a user's geographic location in" Texas. Tex. Civ. Prac. & Rem. Code 143A.002(a)(3). Appellees have never "argue[d] that [this] provision … could not be constitutionally applied to them." *NetChoice*, 49 F.4th at 449 n.4.

Nor is H.B. 20's ban on geographic discrimination alone in this respect. Because Section 7 forbids discriminating based on a user's "viewpoint," *or* the viewpoint of "another person," a platform cannot discriminate against a user whose on-platform speech is indistinguishable from others' merely because that user—or the user's family member, employer, neighbor, acquaintance, or co-religionist—is a member of disfavored group. Tex. Civ. Prac. & Rem. Code §143A.002(a)(1). A platform also cannot exclude a user who does not post at all but instead reads others' content, merely because it does not like that user or who she associates with off-platform. And

because Section 7 applies regardless of whether "the viewpoint is expressed on a social media platform *or through any other medium*," the same would be true if the user—or anyone a platform's algorithm associates with that user—had, say, donated money to a political campaign. *Id.* §143A.002(b) (emphasis added). The First Amendment does not protect discriminating against users based on such *off-platform* characteristics. *E.g.*, *303 Creative LLC v. Elenis*, 600 U.S. 570, 590-91 (2023).

On remand, the Court should order the district court to not conflate H.B. 20's regulation of what appears on a platform with H.B. 20's separate ban on discrimination based on off-platform speech, associations, or characteristics. Any theory that platforms have "an absolute First Amendment right to remove anybody … even if doing so would be discriminatory on the basis of religion, or gender, or physical disability, or mental disability," *Taylor v. Twitter, Inc.*, Tr. Hr'g, No. CGC-18-564460, at 23-24 (Cal. Super. Ct. S.F. Cnty., June 14, 2018), fails under *303 Creative*.

### C. Section 230

The Court should also instruct the district court that Appellees' members must choose, on a function-by-function basis, whether their theory is that they enjoy First Amendment protection or that they have Section 230 immunity for each specific application of the statute. They cannot have it both ways. *See Anderson v. TikTok*, No. 22-3061, 2024 WL 3948248, at *3 (3d Cir. Aug. 27, 2024) (explaining relationship between §230 and First Amendment given *Moody*).

At the same time Appellees insist the exercise of "editorial discretion" makes them the speaker of *all* user-generated content on sites, *but see, e.g.*, *Moody*, 144 S.Ct. at 2409-10 (Barrett, J., concurring), they protest that §230 is irrelevant because it

only orders courts not to "treat[]" them as the "speaker," 47 U.S.C. §230(c)(1). But if Appellees' members are "combining 'multifarious voices'" as part of their own expression, *Moody*, 144 S.Ct. at 2405 (maj. op.), then it follows they are "responsible" at least "*in part* ... for the creation or development" of the final expressive product, 47 U.S.C. §230(f)(3) (emphasis added). That would mean no immunity under §230's plain terms.

Appellees may object that §230 is irrelevant to the constitutional question. Not so. Each Justice who examined this issue at oral argument understood the interconnectedness of §230 and the First Amendment. *See Moody v. NetChoice LLC*, No. 22-277, Oral Arg. Tr. at 149:3-7 (U.S. Feb. 26, 2024) (Barrett, J.) ("[I]f what we say about this is that this is speech that's entitled to First Amendment protection, I do think then that has Section 230 implications for another case."); *see also id.* at 65:20-23 (Thomas, J.) (similar); *NetChoice, LLC v. Paxton*, No. 22-555, Oral Arg. Tr. at 9:3-14, 10:13-17 (U.S. Feb. 26, 2024) (Gorsuch, J.) (similar); *id.* at 24:4-18 (Alito, J.) (similar). Nor can the issues be separated. If, as Appellees suppose, §230 offers a shield for their "own expressive activity or content (i.e., first-party speech)," *Anderson*, 2024 WL 3948248 at *2, despite what §230 says, it would be unconstitutional. Congress cannot privilege "certain preferred speakers" over others who also engage in first-party online speech. *Citizens United v. FEC*, 558 U.S. 310, 340 (2010).

Furthermore, Appellees *themselves* have injected Section 230 into this case by claiming it preempts H.B. 20. *See* ROA.57-60. The Court should not permit Appellees' members to continue talking out of both sides of their mouths. *See, e.g.*, *NetChoice*, 49 F.4th at 496 (Southwick, J., dissenting in part) ("The Platforms

certainly have taken aggressive, inconsistent positions … about the relevance of the First Amendment to their actions."). This pattern has persisted because Appellees' members' §230 immunity and their purported First Amendment rights usually do not arise in the same litigation because the former is a shield and the latter is a sword. Here, however, both issues are squarely before the Court, and requiring Appellees to identify their theory may streamline discovery and simplify this litigation.

### D. Severability

The Attorney General does not believe Appellees can satisfy the facial-challenge standard—especially after *Moody*. But if the district court disagrees, the Court should require it to engage in a meaningful severability analysis. Under H.B. 20, courts must consider severable not just "every provision, section, subsection, sentence, clause, phrase, or word," but "every application …." H.B. 20 §8(a). "Severability is … a matter of state law," *Leavitt v. Jane L.*, 518 U.S. 137, 139 (1996) (per curiam), and Texas gives near-dispositive weight to such clauses, *e.g.*, *Builder Recovery Servs., LLC v. Town of Westlake*, 650 S.W.3d 499, 507 (Tex. 2022). Accordingly, at an absolute minimum, this "strong severability provision," *Moody*, 144 S.Ct. at 2427 (Alito, J., concurring in judgment), means that each of H.B. 20's distinct obligations must be independently evaluated using the proper facial analysis.

## III. The Court Should Clarify Three Additional Points.

In its remand order, the Court should clarify that under the law-of-the case doctrine, *see Royal Ins. Co. of Am. v. Quinn-L Capital Corp.*, 3 F.3d 877, 881 (5th Cir. 1993), the district court cannot again enjoin the Attorney General from enforcing those provisions and applications of H.B. 20 whose lawfulness this Court upheld,

and which the Supreme Court denied certiorari, i.e., the "one-and-done" disclosures regarding an acceptable use policy and content management and business practice disclosures, and the "biannual transparency-report requirement." *NetChoice*, 49 F.4th at 485. By contrast, H.B. 20's "individualized-explanation provisions" should be assessed anew using the correct facial standard. *Moody*, 144 S.Ct. at 2398.

Next, although the district court's legal errors require vacatur of its preliminary injunction, the Attorney General does not oppose entry of an administrative stay pending discovery of enforcement of those provisions and applications of H.B. 20—other than those (just discussed) subject to the law-of-the-case doctrine—regarding on-platform expression, but not provisions and applications barring discrimination based on off-platform speech, associations, or characteristics, like being in Texas. Such a stay would allow the parties to engage in orderly discovery and motions practice while respecting Texas's fundamental interest in enforcing its laws.

Finally, this panel should retain jurisdiction. Panels may do so when remanding for the "purpose of developing the factual record." Order at 2, *State of Texas v. DHS*, No. 23-50869 (5th Cir. Jan. 26, 2024), ECF No. 117-1 (collecting cites); *accord Daves v. Dallas County*, 22 F.4th 522, 548 (5th Cir. 2022) (en banc). Any other course would be highly inefficient given the likelihood of future appellate proceedings and this panel's significant familiarity with the underlying issues.

## Conclusion

The Court should vacate the district court's injunction and order a limited remand to the district court to permit the parties to engage in the fact-finding necessary to properly assess Appellees' facial challenge.

Respectfully submitted.

/s/ Aaron L. Nielson
AARON L. NIELSON
Solicitor General
Aaron.Nielson@oag.texas.gov

WILLIAM F. COLE
Deputy Solicitor General

Counsel for Defendant-Appellant
Ken Paxton, Attorney General
of Texas

KEN PAXTON
Attorney General of Texas

BRENT WEBSTER
First Assistant Attorney General

RYAN S. BAASCH
Associate Deputy Attorney General
for Civil Litigation

Office of the Attorney General
P.O. Box 12548 (MC 059)
Austin, Texas 78711-2548
Tel.: (512) 936-1700
Fax: (512) 474-2697

## Certificate of Service

On September 25, 2024, this document was served via CM/ECF on all registered counsel and transmitted to the Clerk of the Court.

/s/ Aaron L. Nielson
Aaron L. Nielson

## Certificate of Compliance

This brief complies with the Court's order because: (1) it is ten pages, excluding the exempted parts; and (2) the typeface requirements of Rule 32(a)(5) and the type style requirements of Rule 32(a)(6) because it has been prepared in a proportionally spaced typeface (14-point Equity) using Microsoft Word.

/s/ Aaron L. Nielson
Aaron L. Nielson